**FEDERAL–MOGUL CORPORATION, Plaintiff and Plaintiff–Intervenor,**

**The Torrington Company, Plaintiff and Plaintiff–Intervenor,**

**v.**

**UNITED STATES, Defendant,**

**NTN Bearing Corporation of America, American NTN Bearing Manufacturing Corporation and NTN Corporation; Koyo Seiko Co., Ltd. and Koyo Corporation of U.S.A.; Peer Bearing Company; NSK Ltd. and NSK Corporation; Caterpillar Inc.; Minebea Co., Ltd. and NMB Corporation, Defendant–Intervenors.**

Court No. 91–07–00530.
Slip Opinion No. 94–186.

United States Court of International Trade.

Dec. 7, 1994.

444

Frederick L. Ikenson, P.C., Frederick L. Ikenson, J. Eric Nissley, Joseph A. Perna, V and Larry Hampel, Washington, DC, for plaintiff and plaintiff-intervenor Federal–Mogul Corp.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., Wesley K. Caine, Christopher J. Callahan, John M. Breen, Geert De Prest, Margaret E.O. Edozien, Lane S. Hurewitz, Patrick J. McDonough, Robert A. Weaver and Amy S. Dwyer, Washington, DC, for plaintiff and plaintiff-intervenor The Torrington Co.

Frank W. Hunger, Asst. Atty. Gen.; David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Velta A. Melnbrencis and Jane E. Meehan; John D. McInerney, Acting Deputy Chief Counsel for Import Admin., Dean A. Pinkert, Stephen J. Claeys and Craig R. Giesze, Atty.–Advisors, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, of counsel, Washington, DC, for defendant.

Barnes, Richardson & Colburn, Robert E. Burke, Donald J. Unger, Kazumune V. Kano, Diane A. MacDonald and Lawrence M. Friedman, Chicago, IL, for defendant-intervenors NTN Bearing Corp. of America, American NTN Bearing Mfg. Corp. and NTN Corp.

Powell, Goldstein, Frazer & Murphy, Peter O. Suchman, Neil R. Ellis, Susan E. Silver and Niall P. Meagher, Washington, DC, for defendant-intervenors Koyo Seiko Co., Ltd. and Koyo Corp. of U.S.A.

Venable, Baetjer, Howard & Civiletti, John M. Gurley, John C. Dibble and Lindsay B. Meyer, Washington, DC, for defendant-intervenor Peer Bearing Co.

Lipstein, Jaffe & Lawson, Robert A. Lipstein, Matthew P. Jaffe and Grace W. Lawson, Washington, DC, for defendant-intervenors NSK Ltd. and NSK Corp.

Powell, Goldstein, Frazer & Murphy, Richard M. Belanger, Neil R. Ellis and D. Christine Wood, Washington, DC, for defendant-intervenor Caterpillar Inc.

White & Case, Walter J. Spak, William J. Clinton, David E. Bond and Edmund W. Sim,

Washington, DC, for defendant-intervenors Minebea Co., Ltd. and NMB Corp.

## *OPINION*

TSOUCALAS, Judge:

Plaintiff-intervenors Federal–Mogul Corporation ("FMC") and The Torrington Company ("Torrington") and defendant-intervenors NSK Ltd. and NSK Corporation ("NSK") challenge the Department of Commerce, International Trade Administration's ("Commerce") redetermination on remand filed in this case, *Final Results of Redetermination Pursuant to Court Remand, Federal–Mogul and The Torrington Company v. United States, Slip Op. 94–40 (March 7, 1994)* ("*Final Results*"), as amended by *Amended Final Results of Redetermination Pursuant to Court Remand, Federal–Mogul and The Torrington Company v. United States, Slip Op. 94–40 (March 7, 1994)* ("*Amendment*"). Specifically, FMC and Torrington contest as unsupported by substantial evidence and not in accordance with law Commerce's circumstance of sale ("COS") adjustment and exporter's sales price ("ESP") offset to foreign market value ("FMV") for home market pre-sale inland freight when United States price ("USP") is based on ESP. NSK contests as unsupported by substantial evidence and not in accordance with law Commerce's methodology for determining whether pre-sale freight is a direct or indirect expense when USP is based on purchase price and its alleged failure to correctly implement this Court's remand instructions by adjusting pre-sale freight for FMV matched to ESP transactions. NSK also alleges the commission of a clerical error and a misapplication of the Japanese value added tax ("VAT") factor.

### Background

In *Federal–Mogul Corp. v. United States,* 18 CIT ——, Slip Op. 94–40, 1994 WL 88926 (March 7, 1994), the Court remanded this case ordering Commerce to determine whether Commerce has statutory authority to adjust FMV, calculated using purchase price, for pre-sale inland freight in light of *Ad Hoc Comm. of AZ–NM–TX–FL Producers of Gray Portland Cement v. United States* ("*Ad Hoc Comm.*"), 13 F.3d 398 (Fed. Cir.1994).

Commerce filed the Final Results on May 20, 1994 and the Amendment on July 14, 1994. FMC, Torrington and NSK contest the Final Results.

### *Discussion*

Commerce's final results filed pursuant to a remand will be sustained unless that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Alhambra Foundry Co. v. United States,* 12 CIT 343, 345, 685 F.Supp. 1252, 1255 (1988).

■ FMC asserts that a dumping margin calculated when USP is based on ESP will be smaller than a dumping margin in a purchase price situation because, although home market pre-sale freight is deductible from FMV in an ESP situation, it is not deducted in purchase price comparisons. Specifically, FMC states the distortion of dumping margins arises from Commerce's use of the ESP offset when pre-sale freight is found to be an indirect expense, pursuant to 19 C.F.R. § 353.56(b)(2) (1990). *Comments of Federal–Mogul Corporation on the Final Results of Redetermination Pursuant to Court Remand* ("*FMC's Comments*") at 6–11.

Torrington contends Commerce's post-*Ad Hoc Comm.* rationale regarding home market pre-sale freight adjustment is little different from the prior "inherent authority" rationale. According to Torrington, Commerce has deemed *Ad Hoc Comm.* requires only a reclassification of the adjustment, rather than its elimination. *Comments of the Torrington Company Regarding Remand Determination* ("*Torrington's Comments*") at 1–4.

NSK states that the NSK ball bearing deposit rate announced by Commerce was in error because Commerce failed to include and to weight-average ESP transactions and

best information available transactions. *Comments of Defendant–Intervenors NSK Ltd. and NSK Corporation on Final Remand Results ("NSK's Comments")* at 1–2. Because Commerce has already responded to this clerical error and corrected the Final Results, the Court will not further discuss this issue. *Amended Final Results of Redetermination Pursuant to Court Remand, Federal–Mogul and The Torrington Company v. United States, Slip Op. 94–40 (March 7, 1994).*

With respect to pre-sale freight, NSK asserts that Commerce exceeded the scope of this Court's remand, which referred only to FMV calculated using purchase price, by adjusting FMV for *both* purchase price and ESP transactions. *NSK's Comments* at 3–4. Therefore, NSK urges the Court to order a remand for Commerce to adjust FMV only in purchase price situations. *Id.* Further, NSK argues that Commerce erred in denying NSK pre-sale movement expenses incurred on purchase price transactions. Specifically, NSK objects to the methodology adopted by Commerce to determine whether pre-sale freight expenses are direct or indirect in a purchase price comparison. *Id.* at 4–6.

The Court remanded this case with these instructions:

> It is a cardinal rule of administrative law that an agency should be allowed to decide an issue for itself before a court addresses that issue. (Citation omitted.) This Court agrees with the ITA that it should be given the opportunity to address this issue first in light of the Federal Circuit's decision in *Ad Hoc Comm.*

> Therefore, this case is remanded to the ITA to allow the ITA to determine whether it has statutory authority to adjust FMV, calculated using purchase price, for pre-sale inland freight in light of *Ad Hoc Comm.*

*Federal–Mogul Corp.,* 18 CIT at ——–——, Slip Op. 94–40 at 7–8.

On remand, Commerce decided that, in light of *Ad Hoc Comm.,* it can no longer deduct home market pre-sale freight expenses from FMV pursuant to its inherent power to fill gaps in the antidumping duty

statute. Instead, when USP is based on *purchase price,* Commerce will adjust for home market pre-sale freight pursuant to the COS provision of 19 C.F.R. § 353.56 when the expense is directly related to the home market sales under consideration (a direct expense). To determine whether pre-sale freight is a direct expense, Commerce will consider whether the pre-sale warehousing expense is shown to be a direct expense. If the pre-sale warehousing constitutes a direct expense, Commerce will deem the pre-sale freight expense incurred in bringing the merchandise to the warehouse a direct expense as well. When USP is based on *ESP,* Commerce will use the COS adjustment in the same manner and will, additionally, adjust for any pre-sale freight charges found to be indirect selling expenses under the ESP offset provision, 19 C.F.R. § 353.56(b)(1) and (2). *Final Results* at 2–4.

In the Final Results at issue, Commerce treated pre-sale freight as indirect expenses and implemented ESP offset adjustments to FMV with respect to ESP sales. *Id.*

The fact that a dumping margin may differ depending upon whether USP is calculated based on ESP or purchase price and Commerce's authority to use an ESP offset for pre-sale freight in ESP transactions when no adjustment is made to FMV for pre-sale freight in PP transactions was explicitly upheld by the Federal Circuit in *Smith–Corona Group, Consumer Prods. Div., SCM Corp. v. United States,* 713 F.2d 1568, 1577–79 (Fed. Cir.1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984), wherein the Court stated:

> The difference between United States price generated from purchase price and from exporter's sales price was created by the statute. Were it not for the exporter's sales price offset, comparisons based on purchase price would be fair, yet comparisons based on exporter's sales price would be skewed in favor of a higher dumping margin.... In view of the discretion accorded the Secretary under the statute to make adjustments to foreign market value, we conclude that the exporter's sales price offset ... is a proper and reasonable exer-

cise of the Secretary's authority to administer the statute fairly.

*Id.* at 1578–79.

In addition, the Court agrees with the rationale articulated in a recent post-*Ad Hoc Comm.* case which sustained Commerce's new policy of deducting pre-sale freight in ESP comparisons as indirect expenses under the COS provision subject to the ESP offset cap, and in purchase price comparisons under the COS provision if they are direct selling expenses. *Ad Hoc Comm. of AZ–NM–TX–FL Producers of Gray Portland Cement v. United States,* 18 CIT ——, ——, Slip Op. 94–151 at 6–13, 1994 WL 534945 (Sept. 26, 1994). The Court also agrees with the rationale expressed in *Ad Hoc Comm. of AZ–NM–TX–FL Producers of Gray Portland Cement v. United States,* 18 CIT ——, ——, Slip Op. 94–152 at 2–4, 1994 WL 534945 (Sept. 26, 1994) that, in a purchase price comparison, if the pre-sale warehousing expense is not shown to be a direct expense, then it follows that the pre-sale freight expense is also not shown to be a direct expense.

■ As to NSK's argument that Commerce exceeded the scope of this Court's remand, this Court finds the argument to be without merit. Commerce did not exceed the scope of this Court's remand instructions as adjustments to FMV in both purchase price and ESP situations are linked. Further, Commerce could not ignore the *Ad Hoc Comm.* holding that Commerce cannot deduct pre-sale freight from FMV pursuant to its inherent power to fill in gaps in the antidumping statute. Therefore, Commerce developed a new approach as to both ESP and purchase price situations.

■ Finally, NSK also asserts that, because the Japanese VAT did not become applicable until April 1, 1989 and the period of review at issue is November 9, 1988 through April 30, 1990, this Court should remand this case so that the VAT factor is applied only to transactions on or after April 1, 1989. *NSK's Comments* at 2–3.

In response, Torrington argues that, although NSK is correct that the Japanese VAT came into effect on the date noted, a programming revision will have a *de minimis* effect on the final margins, but Torrington defers to this Court's judgment on this issue. *Rebuttal of The Torrington Company to Comments Filed by NSK Ltd.* at 1–2. Commerce requests this issue be remanded for reconsideration and correction, if necessary. *Defendant's Response to the Comments on the Final Results of Remand Redetermination Filed by Federal–Mogul, NSK Ltd. and NSK Corporation, and Torrington Company* at 3.

Therefore, this Court further remands this issue for reconsideration and correction, if the VAT factor was in fact applied for the entire review period.

### Conclusion

In accordance with the foregoing opinion, this Court, after due deliberation and a review of all papers in this action, hereby remands this case to Commerce to determine whether the VAT factor is applied only during the period of review and, if it is not, to make it so. In all other respects, Commerce acted in accordance with law and was supported by substantial evidence and this case is dismissed.